# MANAGEMENT SERVICE AGREEMENT

This Management Service Agreement ("<u>Agreement</u>") is entered into and is effective as of September 24, 2010, by and between White Stone Energy LLC, a Texas limited liability company with its principal office at 801 Travis, Suite 2150, Houston, Texas 77002 ("<u>White Stone</u>"),  KY USA Energy, Inc., P.O. Box 3008, London, Kentucky, 40743 ("<u>KY USA</u>") and, together with White Stone, the "<u>Parties</u>").

## Background

1. White Stone and the White Stone Personnel (defined below) is in the business of evaluating, managing, operating, and providing technical and reporting services in the upstream oil and gas sector.

2. KY USA is in the business of managing and operating oil and gas assets in the upstream and midstream sector.

3. Fees, expenses and other obligations hereunder will be paid or rendered from KY USA from funds that include but are not limited to the Debtor in Possession Financing.

4. KY USA desires to engage White Stone to provide certain consulting and managerial services as Chief Restructuring Officer in connection with the KY USA Energy, Inc. bankruptcy case.

## Agreements

The Parties hereto agree as follows:

1. <u>Project; Services.</u>

    (a) <u>Project</u>.  KY USA is engaging White Stone to provide certain management, financial, commercial, land, engineering, technical and operations as Chief Restructuring Officer and consultant in connection with the KY USA bankruptcy case (the "<u>Project</u>"). White Stone accepts the engagement described in this Agreement.

    (b) <u>Services</u>.  In connection with the Project, White Stone will, using personnel acceptable to KY USA, provide assistance, advice and expertise as required. The Services shall include, but shall not be limited to, the review and evaluation of the current operational management, engineering practices and application, the handling of land and other commercial issues or obligations and a review and analysis of the financial, accounting and bookkeeping, including a review of the quarterly and annual financial statements and status of required filings (the "<u>Services</u>").

2. <u>Term.</u>

    (a) The term of the Agreement will begin as of the date of this Agreement and continue for a primary term of two (2) months and continuing month to month thereafter unless terminated earlier in accordance with <u>Paragraph 13</u> below.  After this Agreement enters the month-to-month period described in the preceding sentence, either Party can

terminate this Agreement as of the end of any month by giving the other Party 30 days prior written notice.

    3.    <u>Fees and Incentive</u>.

As fees for Services rendered by White Stone under this Agreement, KY USA shall pay White Stone a rate of $60,000 per month (except for the period of September 24, 2010 through the date this retention is approved by the Court). White Stone will provide KY USA an invoice at the end of each month for the fees and expenses as described in paragraph 4 below. KY USA will pay the White Stone's invoice in the next payable cycle or within 30 days of the receipt of each invoice, whichever comes first. KY USA shall also pay White Stone a retainer of $60,000.00, to be applied to White Stone's final invoice. The total fees and expenses for the period of September 24, 2010 through and including the date this retention is approved by the Court, shall be capped at $50,000.

    4.    <u>Expenses</u>.

KY USA will reimburse White Stone for out of pocket expenses related to White Stone's provision of the Services. In all instances, White Stone shall present to KY USA an itemized account of such expenses, together with supporting vouchers/receipts.

    5.    <u>Relationship of Parties.</u>

(a) This Agreement does not create an employee-employer relationship between KY USA (or any of its parent or subsidiary companies, or any affiliated or related entities) and White Stone or any of White Stone's employees or owners (collectively, the "<u>White Stone Personnel</u>"). It is expressly agreed and intended that White Stone and each of the White Stone Personnel is acting as an independent contractor in performing its Services hereunder, and under no circumstances shall White Stone or any White Stone Personnel be deemed an employee of KY USA (or any of its parent or subsidiary companies, or any affiliated or related entities), nor shall any employee of KY USA (or any of its parent or subsidiary companies, or any affiliated or related entities) be deemed an employee of White Stone for any purpose.

(b) White Stone bears full responsibility for complying with all laws (federal, state, local, statutory, decisional or otherwise) in carrying out its obligations and duties under this Agreement and those governing its operation and employment of employees including, without limitation, the Internal Revenue Code, the Fair Labor Standards Act, wage and hour laws, unemployment insurance laws, workers compensation laws and all laws prohibiting discrimination in employment. White Stone shall forever indemnify KY USA from and against any liability, however, arising, arising from or related to White Stone's failure to comply with all applicable laws.

(c) White Stone acknowledges that neither White Stone nor any White Stone Personnel is eligible to participate in or accrue any benefits under any employee benefit plan offered by or through KY USA and/or its related entities. White Stone acknowledges that KY USA provides valuable pension, welfare, fringe and other compensatory benefits to certain employees. White Stone agrees that, even if a court or government agency determines that White Stone or any White Stone Personnel and KY USA have had a common law employer-employee relationship, White Stone and the White Stone Personnel will still be

bound by this Agreement and will not be entitled to receive from KY USA (or have KY USA provide on behalf of White Stone or any White Stone Personnel) any different or additional pay, or any benefits, insurance coverage, tax payments, or withholding, or compensation of any kind.  White Stone, on behalf of itself and each of the White Stone Personnel, hereby knowingly and voluntarily waives any right to claim any such benefits or payments on the ground of the performance of Services under this Agreement.

6.  <u>Contractor Has No Authority to Use The Name KY USA</u>

Neither White Stone nor any White Stone Personnel shall, without the prior written consent of KY USA, use the name "KY USA" or any derivative thereof, or the name of any KY USA customer, on any written documents, stationery, business cards, advertisements, directories, office doors or in any other place or manner.

7.  <u>Confidential and Proprietary Information.</u>

(a) White Stone acknowledges that in performing the Services hereunder White Stone and the White Stone Personnel will have access to certain information (the "<u>Confidential and Proprietary Information</u>") relating to KY USA's business:

- *i*) that gives KY USA a competitive advantage;
- *ii*) that is not generally known by other entities or individuals affiliated with KY USA;
- *iii*) that could not be determined or learned by someone outside KY USA through publicly available sources or otherwise;
- *iv*) that is only made available to White Stone due to the Services White Stone is providing for KY USA; and
- *v*) the use or disclosure of which would be damaging to KY USA;

and such Confidential and Proprietary Information includes, without limitation:

- i) any and all trade secrets, transaction structure, intellectual property or any confidential information concerning the business, financial arrangements or position of the KY USA, its business partners, its vendors, or its clients;
- ii) technology, know-how, programs and systems used or provided by KY USA, its business partners, its vendors, or its clients;
- iii) client lists;
- iv) advice to clients;
- v) any of the dealings, transactions and affairs of the business of KY USA or its clients (including confidential information of such clients); and
- vi) any of the terms of contracts, arrangements and transactions between KY USA and its clients.

(b) White Stone agrees that, both during and after the period during which Services are provided under this Agreement, White Stone shall not (and shall not permit any White Stone Personnel to) use or divulge to any person any Confidential and Proprietary Information, whether received or created verbally or in writing, other than in the proper course of performance of providing Services hereunder, as permitted by KY USA and/or any

3

court having jurisdiction over this matter.  White Stone agrees to treat all information about the business of KY USA, its business partners, its vendors, and its clients as Confidential and Proprietary Information unless it is known to the general public.  White Stone agrees to take all reasonable and necessary steps to maintain the secrecy and prevent the disclosure and improper use of Confidential and Proprietary Information.

        (c)    White Stone acknowledges that documents, other than documents pertaining to the KY USA's dealings with White Stone, received or created by White Stone while performing the Services hereunder shall be and remain the exclusive property of KY USA.  Such documents include, without limitation, files, memoranda, audio and visual communications, correspondence, reports and contact lists (whether written, electronic, digital or otherwise).

        (d)    White Stone agrees not to retain any such documents after completion of the Services hereunder and to return all such documents (including all copies) promptly upon the cessation of this Agreement.

    8.    <u>Authority</u>.  White Stone represents and warrants to KY USA that its execution of and performance under this Agreement has been duly authorized and will not violate the provisions of any agreement to which White Stone or any White Stone Personnel is a party or to which it may be subject.

    9.    <u>Indemnification</u>.

        (a)    KY USA agrees to indemnify and hold harmless White Stone and the White Stone Personnel from and against any and all third-party losses, claims, causes of action, injuries, damages, costs and/or expenses (including reasonable attorneys' fees) (collectively, a "<u>Loss</u>") arising from or related to White Stone's provision of the Services under this Agreement; <u>provided</u> that KY USA will not be obligated to indemnify or hold harmless White Stone or any of the White Stone Personnel to the extent such Loss relates to the gross negligence or willful misconduct of White Stone or any of the White Stone Personnel.

        (b)    White Stone agrees to indemnify and hold harmless KY USA and any affiliates of KY USA to which White Stone provides Services under this Agreement from and against any and all Losses arising from or related to White Stone's provision of the Services under this Agreement, <u>but only</u> to the extent such Loss relates to the gross negligence or willful misconduct of White Stone or any of the White Stone Personnel.

    10.    <u>Assignment</u>.  White Stone shall not assign its obligations hereunder to a third party without prior written consent of KY USA, and/or unless any court of competent jurisdiction so orders.

    11.    <u>Nonsolicitation of Customers</u>.  Unless otherwise ordered by a court of competent jurisdiction, White Stone acknowledges that KY USA and its affiliates have invested substantial time and money in the development of their bases of clients and customers and that, by virtue of this Agreement, White Stone will gain Confidential and Proprietary Information about those client and customers that White Stone would inevitably have to draw on if it were to solicit them on behalf of a competing business.  As such, White Stone agrees that, for as long as this Agreement remains in effect and for one (1) additional year thereafter, White Stone will not (and will not permit any of the White Stone Personnel

to), on behalf of White Stone or any other person, directly or indirectly, (*i*) solicit the business of or perform any services for any actual or prospective client of KY USA or any of its affiliates for which White Stone performed Services or with respect to which White Stone had access to Confidential and Proprietary Information (each a "Protected Client") during the course of this Agreement if the solicitation of such business or the performance of such services relate to a transaction or potential transaction under discussion between the business to which White Stone is assigned to by KY USA and such Client within the Protection Period (defined below) (each such transaction or potential transaction being a "Protected Relationship"), or (*ii*) attempt to induce any Protected Client or other person with whom White Stone had contact or with respect to which White Stone had access to Confidential and Proprietary Information to terminate, change, or to not pursue, continue or extend (or, with respect to any such other person, cause or encourage any Protected Client to terminate, change, or to not pursue, continue or extend) any Protected Relationship.  As used in this paragraph, "Protection Period" means the shorter of 12 months if the term of this Agreement (including all extensions) exceeds six (6) months, the six (6) months preceding the date on which this Agreement terminates, or 6 months  if the term of this Agreement (including all extensions) is less than six (6) months, the term of this Agreement (including all extensions).

       12.    <u>Integration and Modification of Agreement</u>.  This is the entire Agreement of the Parties with respect to the subject matter hereof and supersedes all prior written or oral representations, agreements and/or understandings between the Parties concerning the subject matter hereof.  This Agreement may be modified, extended or renewed by the Parties hereto only by a writing signed by both Parties or by order of any court having jurisdiction over this matter.  White Stone agrees that it will, upon KY USA's request, require any White Stone Personnel to execute an agreement reiterating the covenants set forth in this Agreement as a condition to the provision of any Services.

       13.    <u>Termination</u>.  KY USA will have the right to immediately terminate this Agreement at any time if:

       (a)    White Stone or any White Stone Personnel (*i*) commits any material breach of its or his/her obligations under this Agreement, or (*ii*) fails or refuses to carry out (or fails or refuses to used due care in carrying out) its or his/her responsibilities or duties under this Agreement; or

       (b)    White Stone or any White Stone Personnel commits any act of fraud, misrepresentation, dishonesty, gross negligence, any breach of its fiduciary duty to KY USA or any misconduct toward KY USA or any of its parent companies, affiliates, subsidiaries or employees; or

       (c)    White Stone or any White Stone Personnel commits any violation of any applicable United States federal or state law, statute, regulation or rule, or foreign law, statute, regulation or rule, or any violation of any applicable United State federal regulatory agency, state regulatory agency, foreign regulatory authority or self-regulatory organization, rule or regulation.

       14.    <u>Notice</u>.  Any notice required or permitted to be given hereunder shall be sufficient if in writing and if sent by registered or certified mail, postage prepaid, to the Parties at the addresses indicated above, or to such other addresses as the Parties hereto may specify, in writing, from time to time.

15. <u>Waiver of Breach</u>.  The waiver by either Party of any breach of any provision of this Agreement (or such Parties delay or forbearance in exercising any rights or remedies arising as a result of such breach) shall not operate or be construed as a waiver of any subsequent breach or any rights or remedies related to any breach.

16. <u>Governing Law</u>.  This Agreement shall be interpreted, construed, governed and enforced according to the laws of the State of Texas and without regard to choice of law or conflict of law rules.

17. <u>Waiver of Jury Trial</u>.  **Each of the Parties knowingly, voluntarily, intentionally and irrevocably waives, the extent permitted by applicable law, any right it or he/she may have to a trial by jury in any litigation arising out of or related to this Agreement or the provision of the Services.**

18. <u>No Agency</u>.  Nothing contained in this Agreement shall constitute or be construed to be or create a partnership or joint venture between KY USA or any of its affiliates and White Stone any White Stone Personnel or any of their respective affiliates.

19. <u>Severability</u>.  If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement.

20. <u>Post-Completion</u>.  White Stone agrees to cooperate with KY USA and to support KY USA in connection with any litigation that may be reasonably related to any Project.  White Stone agrees to assist KY USA to investigate, prepare for and prosecute any litigation as requested and to make available to participate in that litigation such White Stone Personnel as KY USA may request.  KY USA agrees to reimburse the reasonable fees and expenses of White Stone and the White Stone Personnel, as applicable, in connection with any additional Services requested by KY USA following the completion of this Agreement.

21. <u>Interpretation</u>.  Should any provision of this Agreement require interpretation or construction, it is agreed by the Parties that the entity interpreting or construing this Agreement shall not apply a presumption that the provisions hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared the document.  For the purposes of this Agreement only, each reference to KY USA will include its parent companies and affiliated and related entities, and their respective officers, directors, employees, successors and assigns.

IN WITNESS WHEREOF, the Parties hereof have executed this Agreement as of the day and year first hereinabove written.

| **KY USA Energy, Inc.** | **White Stone Energy LLC** |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name _____ |
| Title: _____ | Title: _____ |